1

2

3

4

5

6

7

8                        UNITED STATES DISTRICT COURT

9                      SOUTHERN DISTRICT OF CALIFORNIA

10

11   SITUE SAVELIO TOLUAO,            )    Civil No. 14cv00093 JAH(RBB)
                                      )
12                  Petitioner,       )    **REPORT AND RECOMMENDATION**
                                      )    **DENYING PETITION FOR WRIT OF**
13   v.                               )    **HABEAS CORPUS [ECF NO. 1]**
                                      )
14   SOTO, Warden,                    )
                                      )
15                  Respondent.       )
                                      )
16                                    )
                                      )
17   _____ )

18

19       Petitioner Situe Savelio Toluao, a state prisoner proceeding

20   pro se and in forma pauperis, filed a Petition for Writ of Habeas

21   Corpus on January 13, 2014 [ECF Nos. 1, 2].  There, on several

22   bases, he challenges his conviction for first-degree murder and

23   attempted murder.  (Pet. 2,[1] ECF No. 1; Lodgment No. 1, Clerk's Tr.

24   vol. 2, 570-71, Nov. 20, 2009 (verdict).)  In claim one, he alleges

25   that trial court erred by admitting gang evidence.  (Pet. 7, ECF

26   No. 1.)  Toluao maintains, in claim two, that his right to confront

27   _____

28       [1] All citations are to the page numbers assigned by the
     Court's electronic case filing system.

                              1                    14cv00093 JAH(RBB)

witnesses was violated by the admission of his codefendant's statements about Toluao's involvement in the crimes. (Id. at 9.) Petitioner argues that his right to a fair trial was violated when the trial court denied his severance request (claim three) and allowed testimony that was inadmissible hearsay evidence implicating Toluao in the crimes (claim four). (Id. at 11-12.) In claim five, Petitioner alleges his constitutional rights were violated when the trial court denied his request for an evidentiary hearing and summarily denied his motion for a new trial. (Id. at 14.) Toluao argues in claim six that the trial court erred in denying his petition for release of juror information. (Id. at 15.) In claim seven, Petitioner alleges the trial court failed to dismiss the prior strike conviction allegation pursuant to People v. Superior Court (Romero), 13 Cal. 4th 497, 917 P.2d 628, 53 Cal. Rptr. 2d 789 (1996). (Id. at 16.) Finally, in claim eight, Toluao asserts that he "joins into arguments made by co-Petitioner that would accrue to his benefit." (Id. at 17.)

Respondent Soto filed an Answer to Petition for Writ of Habeas Corpus [ECF No. 5], along with a Notice of Lodgment [ECF No. 6]. Petitioner has not filed a Traverse. For the reasons discussed below, the Petition should be **DENIED**.

## I.   FACTUAL BACKGROUND

Toluao's conviction arises out of a gang-related drive-by shooting. The California Court of Appeal gave the following recitation of the factual background as established at trial:

The Shooting

Defendants are members of the Deep Valley Bloods (Bloods) criminal street gang in Oceanside, which primarily consists of Samoan members. Their rival gang

2

is the Deep Valley Crips (Crips), a predominantly African-American gang.

In June 2005, other Bloods members, including Patrick Johnson, Michael Linnan and Masi Toluao (Masi), visited the gravesite of Rusty Seau, who had been killed by a Crips member earlier that month. The gravesite had been burned. The men were angry that Rusty was killed and that his gravesite was desecrated. They discussed retaliation, with Masi suggesting that they shoot Crips members. Linnan offered the use of his car and Johnson stated that he would be the driver because, as an African-American, he could go into Crips territory without raising suspicions.

Later that evening, many Bloods members congregated at Masi's house on Arthur Avenue and continued discussing plans for the retaliation. Masi arranged for Johnson to obtain guns from another gang member. Johnson and Defendants went to Linnan's house, picked up Linnan's Ford Taurus, and then obtained the guns from another house.

Johnson and Defendants drove into the Whelan Ranch housing complex, a location where they were likely to find Crips members. Johnson got out of the car, approached a group of African-Americans and asked them for directions. Based on their response, Johnson believed they were Crips and returned to the car where he informed Defendants that the group was "crab niggers." Defendants "pump[ed] each other up."

Johnson pulled the car around a corner and saw the group of African-Americans approaching a Cadillac. Defendants then got out of the car and ran towards the Cadillac's location. While Johnson was waiting for Defendants, he heard gunshots. Defendants then ran back and jumped in the car. Toluao exclaimed, "Go, go. We just shot three people, and I kicked some girl in the head and domed somebody." Siulua stated that he shot the driver.

Oates was in the driver's seat of the Cadillac that night. He heard gunshots and then noticed that Pruitt, who was standing in front of the car, had been shot. Oates observed that a man had his hands on the car and was kicking underneath it. Oates was then shot through the passenger side window. Pruitt died at the scene that night, and Oates suffered a gunshot wound that fractured his clavicle.

At trial, Oates was unsure if there was more than one shooter; however, he previously told officers that there were multiple perpetrators. He did not get a good look because he was trying to stay low in his seat. He described the one person that he saw as a heavy man

3

14cv00093 JAH(RBB)

wearing a white shirt, black beanie, and a bandana across his face.  Oates also stated that the person had a dark skin tone and tight braids pressed along the side of his head that were similar to cornrows.  Oates told officers that he thought the shooter was possibly a Black person.

Eyewitness Testimony

Brittney Patterson was with her friends, including Oates and Pruitt, on the night of the shooting.  When she heard gunshots, Patterson ran to the front of the Cadillac and then got underneath it.  Pruitt was on the ground in front of her.  After the gunfire stopped, someone kicked Patterson in the head and then left.

Patterson saw and heard two people.  Although she did not get a good look, Patterson described one of those people as a heavy Samoan male with two braids or cornrows.  She also stated that the person was wearing a white shirt.

Around midnight on the morning of the shooting, Christine Dinwiddie, a resident of Whelan Ranch, heard 10 to 12 popping sounds like firecrackers.  Dinwiddie looked out of her bedroom window and saw a white or silver four-door Toyota or Ford with its brake lights on and head lights off.  According to Dinwiddie, there were yellow street lights on in the area that changed the appearance of vehicles by casting a hue on them.  After noticing a man in the driver's seat, Dinwiddie saw two men run toward the vehicle.  Although Dinwiddie could not identify the race of the men, she described them as neither White nor African-American.

Around the same time, Jeff Dresser, another resident of Whelan Ranch, heard several gunshots.  Dresser looked out of his window and saw a four-door sedan with its head lights off.  The car appeared to be silver, champagne or cream, but it was hard to make out the color because of the yellow street lights.  Dresser then saw two men "shuffling" toward the vehicle and heard one of them say to the other, "Hurry up, nigga."  One of the men had his hair pulled back, possibly braided in cornrows.  Dresser assumed the men were Black because they used the term "nigga" and were in a Crips neighborhood.

Dresser accompanied police officers to a storage facility several months after the incident.  He identified a Ford Taurus that appeared to be the car he saw on the night of the shooting.  Dresser particularly noticed that the car in the storage facility was the same color and had similar wrap around tail lights as the car he previously saw at the scene of the crime.  Dresser told officers that he was 75% sure of his identification.

4

Rachel Bourne also lived in Whelan Ranch at the time of the shooting.  Around midnight, Bourne heard gunshots and went outside onto her balcony.  Bourne noticed a four-door Ford Contour or Taurus with its engine running.  She heard someone say something similar to "we got them" and then saw two men get into the car.

Bourne eventually called 911 and described the two men that she saw as "lighter skin black guys."  Later that night, Bourne heard Patterson tell the police that the men were Samoan.  Bourne told officers that she was uncertain of the race of the two individuals, but that they could have been Samoan, Mexican or light skinned Black men.  A few days after the incident, Bourne told officers that although other people indicated the men were Samoan, she still thought they were Black.  At trial, Bourne stated that one of the men had a complexion similar to a Mexican, Samoan or light skinned Black person and the other man was slightly darker.  She also stated that one of the men had his hair in a ponytail or braids.

Forensic Evidence

The police found a black glove and a brochure in Linnan's Taurus.  Toluao's fingerprint was on the brochure.  A DNA test on the glove revealed that Siulua was a possible contributor of the DNA and Toluao could not be excluded.

Officers also found numerous items near the location of the shooting, including a bandana, beanie, jeans, and sneakers.  The beanie had a mixture of DNA on it from at least two people and Toluao could not be excluded as a contributor.  DNA obtained from the jeans and sneakers matched Toluao's DNA profile.

(Lodgment No. 14, People v. Toluao, No. D058242, slip op. at 2-6 (Cal. Ct. App. Oct. 2, 2012).)

## II.  PROCEDURAL BACKGROUND

A second amended complaint filed on August 29, 2007, charged Situe Toluao[2] with the murder of Joaquin Pruitt and the attempted murder of Sean Oates in violation of California Penal Code sections 187(a) and 664.  (Lodgment No. 1, Clerk's Tr. vol. 1, 13-15, Aug.

_____

[2] Peni Siulua and Patrick Johnson were named as codefendants in the second amended complaint.  (Lodgment No. 1, Clerk's Tr. vol. 1, 13-15, Aug. 29, 2007 (second amended complaint).)

29, 2007 (second amended complaint).)  The complaint alleged that Petitioner committed both crimes for the benefit of a criminal street gang in violation of California Penal Code section 186.22(b)(1).  (Id. at 15.)  The complaint stated that Toluao was a principal and that at least one principal personally discharged a firearm causing great bodily injury.  (Id. at 14, 16.)  The complaint also alleged Petitioner had two prior prison terms and one prior strike conviction that qualified as a serious felony. (Id. at 17-18.)

     Following a jury trial, Toluao was found guilty of attempted murder and first degree murder.  (Lodgment No. 1, Clerk's Tr. vol. 2, 570-71.)  The jury also made findings on the special allegations.  (Id.)  Petitioner filed a motion for a new trial. (Lodgment No. 1, Clerk's Tr. vol. 3, 617-29, Apr. 6, 2010 (motion for a new trial).)  Toluao also moved to strike the prior strike conviction allegation pursuant to People v. Superior Court (Romero), 13 Cal. 4th 497, 917 P.2d 628, 53 Cal. Rptr. 2d 789. (Id. at 681-84, Aug. 4, 2010 (motion to strike).)  In separate rulings, the trial court denied Petitioner's motion for a new trial and his subsequent request to strike the prior strike conviction. (Lodgment No. 6, Rep.'s Tr. Appeal – Augment vol. 6, 488, Aug. 3, 2010 (denying motion for new trial); Lodgment No. 7, Rep.'s Tr. Appeal vol. 20, 2841-42, Sept. 20, 2010 (denying Romero motion).) Toluao had admitted his prior strike conviction earlier in the proceeding, before the court addressed his motion to strike. (Lodgment No. 7, Rep.'s Tr. vol. 20, 2824.)  Toluao was sentenced to 114 years to life in state prison.  (Id. at 2842-43; Lodgment No. 1, Clerk's Tr. vol. 3, 891, Sept. 28, 2010 (minutes).)

6

Petitioner timely appealed. (Lodgment No. 1, Clerk's Tr. vol.
3, 685, Sept. 23, 2010 (notice of appeal).) On direct appeal, he
raised the same eight claims he alleges in this Petition. (See
Lodgment No. 9, Appellant's Opening Br. at 19-69, People v. Toluao,
No. D058242 (Cal. Ct. App. Oct. 2, 2012).) The California Court of
Appeal rejected all of Petitioner's claims and affirmed the
judgment. (Lodgment No. 14, People v. Toluao, No. D058242, slip
op. at 1-2.) Toluao filed a petition for review with the
California Supreme Court, raising the same claims he raised on
appeal. (Lodgment No. 15, Petition for Review at 3-21, People v.
Toluao, [No. S206388] (Cal. Jan. 16, 2013).) The California
Supreme Court denied the petition without comment or citation.
(Lodgment No. 17, People v. Toluao, No. S206388, order at 1 (Cal.
Jan. 16, 2013).)

Toluao's Petition in this case was dated January 5, 2014, and
filed with the Court on January 13, 2014. (Pet. 1, ECF No. 1.)
Respondent argues that Toluao constructively filed his Petition on
January 8, 2014, the date that appears on the trust account form
attached to the Petition. (Resp't's Answer Attach. #1 Mem. P. & A.
13 & n.2, ECF No. 5.) Respondent claims that because the trust
account form was executed on January 8, 2014, and because the
Petition was post-marked January 9, 2014, Toluao could not have
mailed it before January 8, 2014. (Id.) Respondent concedes that
Petitioner "signed his Petition on January 5, 2014, and prepared a
proof of service stating that he placed his Petition in the mail on
that date . . . ." (Id.)

Along with his Petition, Toluao also submitted an Application
to Proceed in Forma Pauperis [ECF No. 2], which he signed on

January 5, 2014.  To support his request, Petitioner attached a certified copy of his trust account which was executed and signed by an authorized officer of the institution on January 8, 2014. (Decl. & Appl. Proceed In Forma Pauperis 4, ECF No. 2.)  Toluao was required to fill out a trust account withdrawal authorization form to request in forma pauperis filing status.  He signed the authorization on January 5, 2014.  (Id. at 5.)

Under the mailbox rule, the Court deems a petition filed on the date Petitioner hands it to prison authorities for mailing. Houston v. Lack, 487 U.S. 266, 276 (1988); Campbell v. Henry, 614 F.3d 1056, 1058-59 (9th Cir. 2010); see also Rule 3(d), Rules Governing Section 2254 Cases, foll. 28 U.S.C.A. § 2254 (West 2006). The relevant date is thus the date Toluao's Petition was delivered to prison officials, not when it was placed in the mail.  "A prisoner's control over the filing of his petition ceases when he delivers it to prison officials.  Whether or not the petition is actually placed in the mail, delivered to the court or filed once it arrives there, are all matters beyond the prisoner's control." Huizar v. Carey, 273 F.3d 1220, 1223 (9th Cir. 2001) (citing Houston, 487 U.S. at 270-71).  Additionally, the Ninth Circuit recognized that "prison officials may have an incentive to delay prisoners' court filings, and prisoners will have a hard time proving that the officials did so."  Id.

Respondent does not contest that Toluao signed his Petition and related documents on January 5, 2014, and does not point to any document signed by Petitioner on a later date.  Likewise, Respondent does not challenge that Toluao delivered his Petition to prison authorities on January 5, 2014.  "Initially, the burden

8

falls on Respondent to show this was not the true mailing date."
Quinton v. Clay, No. 07cv0361-LAB (WMc), 2008 WL 744252, at *2
(S.D. Cal. Mar. 17, 2008) (citing Washington v. United States, 243
F.3d 1299, 1301 (11th Cir. 2001) (per curiam)).  "Absent evidence
to the contrary in the form of prison logs or other records, we
will assume that [petitioner's] motion was delivered to prison
authorities the day he signed it . . . ."  Washington, 243 F.3d at
1301.  Here, Respondent does not offer any records to demonstrate
when Toluao handed his Petition to the prison officials for
mailing.  Therefore, the Court gives Toluao the benefit of the
mailbox rule and considers the Petition filed on January 5, 2014,
the date Toluao signed it.

### III.  STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act ("AEDPA"),
28 U.S.C. § 2244, applies to all federal habeas petitions filed
after April 24, 1996.  Woodford v. Garceau, 538 U.S. 202, 204
(2003) (citing Lindh v. Murphy, 521 U.S. 320, 326 (1997)).  AEDPA
sets forth the scope of review for federal habeas corpus claims:

> The Supreme Court, a Justice thereof, a circuit
> judge, or a district court shall entertain an application
> for a writ of habeas corpus in behalf of a person in
> custody pursuant to the judgment of a State court only on
> the ground that he is in custody in violation of the
> Constitution or laws or treaties of the United States.

28 U.S.C.A. § 2254(a) (West 2006); see Reed v. Farley, 512 U.S.
339, 347 (1994); Hernandez v. Ylst, 930 F.2d 714, 719 (9th Cir.
1991).  Because Toluao's Petition was filed on January 5, 2014,
AEDPA applies to this case.  See Woodford, 538 U.S. at 204.

Section 2254(d) reads as follows:

> An application for a writ of habeas corpus on behalf
> of a person in custody pursuant to the judgment of a

State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254(d).

To present a cognizable federal habeas corpus claim, a state prisoner must allege his conviction was obtained "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C.A. § 2254(a). A petitioner must allege the state court violated his federal constitutional rights. Hernandez, 930 F.2d at 719; Jackson v. Ylst, 921 F.2d 882, 885 (9th Cir. 1990); Mannhalt v. Reed, 847 F.2d 576, 579 (9th Cir. 1988).

A federal district court does "not sit as a 'super' state supreme court" with general supervisory authority over the proper application of state law. Smith v. McCotter, 786 F.2d 697, 700 (5th Cir. 1986); see also Lewis v. Jeffers, 497 U.S. 764, 780 (1990) (holding that federal habeas courts must respect a state court's application of state law); Jackson, 921 F.2d at 885 (explaining that federal courts have no authority to review a state's application of its law). Federal courts may grant habeas relief only to correct errors of federal constitutional magnitude. Oxborrow v. Eikenberry, 877 F.2d 1395, 1400 (9th Cir. 1989) (stating that federal habeas courts are not concerned with errors of state law "unless they rise to the level of a constitutional violation").

10

The Supreme Court, in <u>Lockyer v. Andrade</u>, 538 U.S. 63 (2003), stated that "AEDPA does not require a federal habeas court to adopt any one methodology in deciding the only question that matters under § 2254(d)(1) -- whether a state court decision is contrary to, or involved an unreasonable application of, clearly established Federal law." <u>Id.</u> at 71.  In other words, a federal court is not required to review the state court decision de novo. <u>Id.</u>  Rather, a federal court can proceed directly to the reasonableness analysis under § 2254(d)(1). <u>Id.</u>

The "novelty in . . . § 2254(d)(1) is . . . the reference to 'Federal law, <u>as determined by the Supreme Court of the United States</u>.'" <u>Lindh v. Murphy</u>, 96 F.3d 856, 869 (7th Cir. 1996) (en banc), <u>rev'd on other grounds</u>, 521 U.S. 320 (1997).  Section 2254(d)(1) "explicitly identifies only the Supreme Court as the font of 'clearly established' rules." <u>Id.</u>  "A state court decision may not be overturned on habeas review, for example, because of a conflict with Ninth Circuit-based law . . . ." <u>Moore v. Calderon</u>, 108 F.3d 261, 264 (9th Cir. 1997).  "[A] writ may issue only when the state court decision is 'contrary to, or involved an unreasonable application of,' an authoritative decision of the Supreme Court." <u>Id.</u> (citing <u>Childress v. Johnson</u>, 103 F.3d 1221, 1224-26 (5th Cir. 1997); <u>Baylor v. Estelle</u>, 94 F.3d 1321, 1325 (9th Cir. 1996)).

Furthermore, with respect to the factual findings of the trial court, AEDPA provides:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of

1    rebutting the presumption of correctness by clear and
2    convincing evidence.

3    28 U.S.C.A. § 2254(e)(1).

4                        **IV.   DISCUSSION**

5    **A.   Proper Respondent**

6         To file his Petition in federal court, Toluao used Form CV 68
7    (Rev. Dec. 1998), "Petition for Writ of Habeas Corpus by Person in
8    State Custody," naming Warden Soto as the Respondent and former
9    Attorney General Edmond G. Brown Jr. as "Additional Respondent."
10   (Pet. 1, ECF NO. 1.)  Soto argues that because Toluao is in his
11   custody, he is the proper party to be named in this proceeding, and
12   former Attorney General Brown should be removed as a Respondent in
13   this matter.  (Resp't's Answer Attach. #1 Mem. P. & A. 15, ECF No.
14   5.)

15        The Attorney General of the State of California is not a
16   proper respondent in this action.  Rule 2 of the Rules Governing
17   Section 2254 Cases provides that the state officer having custody
18   of the petitioner must be named as respondent.  See Rule 2(a),
19   Rules Governing Section 2254 Cases, foll. 28 U.S.C.A. § 2254.  But
20   "[i]f the petitioner is not yet in custody -- but may be subject to
21   future custody -- under the state-court judgment being contested,
22   the petition must name as respondents both the officer who has
23   current custody and the attorney general of the state where the
24   judgement was entered."  Id. R. 2(b).  Here, there is no basis for
25   Petitioner to have named the Attorney General as a respondent in
26   this action.  Accordingly, the Court recommends that Edmond G.
27   Brown be removed as an additional Respondent.
28   //

**B.   Admission of Gang Evidence**

In his first claim for habeas relief, Toluao alleges that his constitutional rights were violated when the trial court admitted "unnecessary and inflammatory evidence pertaining to gang members and crimes" as well as "Petitioner's gang letters and lyrics." (Pet. 7, ECF No. 1.)  Respondent counters that because there is no clearly established Supreme Court law which holds that admission of irrelevant or prejudicial evidence violates due process, the state court's denial of this claim was neither contrary to, nor an unreasonable application of, clearly established Supreme Court law. (Resp't's Answer Attach. #1 Mem. P. & A. 17–18, ECF No. 5.)

At trial, Toluao stipulated that he was a documented member of the Deep Valley Bloods, a criminal street gang within the meaning of California Penal Code section 186.22.  (Lodgment No. 7, Rep.'s Tr. vol. 15, 2483, Nov. 13, 2009.)  The trial court accepted the stipulation over the prosecutor's objection, but noted that gang expert testimony "on other topics going to the issue of motive and intent" would be admissible.  (Id. at 2483–84.)  The prosecutor argued that the contents of Toluao's letters and song lyrics showed his gang affiliation and motive.  (Id. at 2495–96.)  The court ruled, over Toluao's objection, that the evidence was admissible and the expert could explain what the lyrics mean because they included "various words or phrases that may not be common lingo to the jurors . . . ."  (Id. at 2495.)

Gordon Govier, a gang detective with the City of Oceanside, testified about Toluao's gang letters and lyrics.  (Lodgment No. 7, Rep.'s Tr. vol. 16, 2505, 2559–64, Nov. 16, 2009.)  A relevant portion of a letter was read to the jury:

13

> "I damn near tripped and almost opened hell the moment I found out another homey fell.  And it was hell doin' 80 on the street smashin'.  Look inside my re[ar]view and seen the po's flashin'.  Fuck 'em though my every thought was on something wicked.  I kept thinkin' about my homey, like, forget a ticket.  My blood pumpin', it was getting hella hot, drastic, looking up ahead and see nothin' but the traffic.  So we took the side road and pressed on the gas, and police, po, po, stay back, man, they wouldn't last.  I pulled up to the turf, but it was too late.  I seen the homey laid out across the yellow tape.  I seen your girl break down and watch your mama cry.  I seen the whole block shed tears and many eyes.  So I booted up and suited up on the avenue, but after that only God knows what I had to do."

(Id. at 2560-61.)  Detective Gordon explained that the letter referenced the afternoon when Rusty Seau was murdered.  (Id. at 2561.)  Another letter introduced at trial contained gang graffiti and rap lyrics describing "a killer from the turf" who wears gang attire.  (Id. at 2562-63.)  The expert also testified about a rap song written by Toluao that discussed seeking retribution for the death of Seau.  (Id. at 2563-68.)

Toluao challenged the admission of this evidence in the petition for review he filed in the California Supreme Court. (Lodgment No. 15, Petition for Review at 3-6, People v. Toluao, [No. S206388].)  The California Supreme Court denied the petition without comment or citation.  (Lodgment No. 17, People v. Toluao, No. S206388, order at 1.)  Accordingly, this Court must "look through" to the state appellate court's decision denying the claim as the basis for its analysis.  Ylst v. Nunnemaker, 501 U.S. 797, 805-06 (1991).

The court of appeal denied this claim, concluding that the trial court did not abuse its discretion in admitting evidence.

> The gang expert testified regarding letters found in Toluao's belongings.  In one of those letters, Toluao wrote about Rusty's murder, stating that he saw his "homey laid out across the yellow tape."  Another letter

14

contained gang graffiti and rap lyrics.  The lyrics described being a "killer from the turf," "put[ting] in work," and wearing gang attire.  Toluao also wrote a rap song entitled "Rusty" that talked about avenging Rusty's death.

Toluao claims the court erred in admitting the letters and rap lyrics because they were inflammatory and irrelevant.  We disagree with Toluao's argument because the letters and lyrics were directly relevant to his motive and intent in committing the crimes in this case, namely seeking revenge for Rusty's death.  Further, rap lyrics describing gang activities are relevant and admissible in cases charging gang-related crimes. (<u>People v. Zepeda</u> (2008) 167 Cal. App. 4th 25, 35 [songs showed defendant's gang had motive and intent to kill rival gang members]; <u>People v. Olguin</u> (1994) 31 Cal. App. 4th 1355, 1372-1373 [rap lyrics were properly admitted when crime was allegedly gang-related because gang membership was "obviously important," and evidence tending to show it was "highly relevant"].)  Accordingly, we conclude the trial court did not abuse its discretion in admitting evidence of the letters and rap lyrics.

(Lodgment No. 14, <u>People v. Toluao</u>, No. D058242, slip op. at 12-13.)

"A federal habeas court . . . cannot review questions of state evidence law. . . .  Even where it appears that evidence was erroneously admitted, a federal court will interfere only if it appears that its admission violated fundamental due process and the right to a fair trial." <u>Henry v. Kernan</u>, 197 F.3d 1021, 1031 (9th Cir. 1999).  "[F]ailure to comply with the state's rules of evidence is neither a necessary nor a sufficient basis for granting habeas relief." <u>Jammal v. Van de Kamp</u>, 926 F.2d 918, 919 (9th Cir. 1991).  "Evidence erroneously admitted warrants habeas relief only when it results in the denial of a fundamentally fair trial in violation of the right to due process." <u>Briceno v. Scribner</u>, 555 F.3d 1069, 1077 (9th Cir. 2009) (citing <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991)).

15

The Supreme Court has acknowledged its "traditional reluctance to impose constitutional restraints on ordinary evidentiary rulings by state trial courts." Crane v. Kentucky, 476 U.S. 683, 689 (1986). There is no clearly established Supreme Court precedent holding that the "admission of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of the writ." Holley v. Yarborough, 568 F.3d 1091, 1101 (9th Cir. 2009).

> The Supreme Court has made very few rulings regarding the admission of evidence as a violation of due process. Although the Court has been clear that a writ should be issued when constitutional errors have rendered the trial fundamentally unfair, see Williams [v. Taylor], 529 U.S. at 375, 120 S. Ct. 1495, it has not yet made a clear ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of the writ. Absent such "clearly established Federal law," we cannot conclude that the state court's ruling was an "unreasonable application."

Id. (quoting Carey v. Musladin, 549 U.S. 70, 77 (2006). Admission of evidence can violate due process "only if there are no permissible inferences" the jury may draw from the evidence admitted. Jammal, 926 F.2d at 920.

Here, the appellate court determined that Toluao's gang lyrics and letters were relevant to prove Petitioner's motive and intent to commit the gang-related crime. (Lodgment No. 14, People v. Toluao, No. D058242, slip op. at 12-13.) The state court pointed out that "the expert's testimony [concerning gang-related evidence] was no more prejudicial than Defendants' own stipulation that they were documented members of a gang engaged in a pattern of criminal conduct and whose primary activities included 'the commission of one of the crimes set forth in Penal Code Section 186.22.'" (Id. at 15.) The court reasoned that the rap lyrics were relevant

16

evidence of Toluao's affiliation with the gang, loyalty to the gang, as well as motive and intent to avenge Rusty, a fellow gang member, on the night of the murder. (_Id._ at 12-13.)  This conclusion was not fundamentally unfair.  _See_ _United States v. Abel_, 469 U.S. 45, 49 (1984) (holding evidence of defendant's gang membership to be relevant and admissible where motive in issue).

Toluao's rights to a fair trial and due process were not violated by the admission of gang letters and lyrics.  _See_ _Phommachanh v. Foulk_, No. 13CV869-MMA (MDD), 2014 WL 4704589, at *14-17 (S.D. Cal. Sept. 22, 2014) (denying habeas claim based on admission of rap lyrics and gang moniker).  For all these reasons, Toluao's claim based on admission of gang evidence should be **DENIED**.

**C.   Admission of Codefendant's Out-of-Court Statements**

In claim two, Petitioner argues that the trial court violated his right to confront witnesses by admitting his codefendant Siulua's statements that implicated Toluao in the murder. (Pet. 9, ECF No. 1.)  Respondent counters that the statements were properly admitted as declarations against penal interest. (Resp't's Answer Attach. #1 Mem. P. & A. 19, ECF No. 5.)  Respondent Soto also claims that because the statements were nontestimonial, they do not implicate the Confrontation Clause. (_Id._ at 20-21.)

The prosecution intended to introduce at trial the statements made by Toluao's codefendant, Peni Siulua, to Patrick Johnson, who was a coconspirator in the murder of Joaquin Pruitt. (_See_ Lodgment No. 1, Clerk's Tr. vol. 1, 139-49, Sept. 30, 2009 (opposition to motion for severance).)  The defense sought to sever the case and argued that, in the alternative, Siulua's utterances implicating

Toluao should be excluded under People v. Aranda, 63 Cal. 2d 518, 407 P.2d 265, 47 Cal. Rptr. 353 (1965), and Bruton v. United States, 391 U.S. 123 (1968).  (Lodgment No. 1, Clerk's Tr. vol. 2, 411-23, Sept. 17, 2009 (motion for severance); Lodgment No. 7, Rep.'s Tr. vol. 1, 31-34, Oct. 13, 2009.)  The trial court admitted the statements and did not sever the trial.  (Lodgment No. 7, Rep.'s Tr. vol. 1, 37.)

Patrick Johnson[3] testified at trial that he and Defendants drove to the Whelan Ranch condominium complex "looking for Crips." (Lodgment No. 7, Rep.'s Tr. vol. 9, 1568-69, Nov. 3, 2009.) Johnson, Siulua, and Toluao saw a group of African-Americans approaching a Cadillac; Siulua and Toluao got out of Johnson's car and went towards the Cadillac.  (Id. at 1575-78.)  Johnson remained in his car and heard gunshots.  (Id. at 1578-79.)  He testified that Toluao and Siulua ran back and jumped in the car.  (Id. at 1580.)  Siulua told Johnson that he had shot the driver of the Cadillac.  (Id. at 1583.)  One week after the shooting, Siulua told Johnson that he and Toluao were "both shooting in different directions."  (Lodgment No. 7, Rep.'s Tr. vol. 10, 1625, Nov. 4, 2009.)

Detective Damon Smith testified at trial about Johnson's statement to the police.  (Lodgment No. 7, Rep.'s Tr. vol. 13, 2242, 2269-70, Nov. 10, 2009.)  Smith testified that Johnson told him that a week or two after the shooting Siulua phoned Johnson and said that Siulua and Toluao shot some people as they were getting

---

[3] Johnson was charged with murder in this case along with Toluao and Siulua.  (Lodgment No. 1, Clerk's Tr. vol. 1, 13-15.) He pleaded guilty to voluntary manslaughter in exchange for an agreement to cooperate.  (Lodgment No. 7, Rep.'s Tr. vol. 9, 1519-21, Nov. 3, 2009.)

14cv00093 JAH(RBB)

1  into a car and that Siulua was shooting at the car and shot the

2  driver.  (Id. at 2269.)

3      Toluao raised his challenge to the admission of Siulua's out-

4  of-court statements in the petition for review he filed in the

5  California Supreme Court.  (Lodgment No. 15, Petition for Review at

6  6-10, People v. Toluao, [No. S206388].)  The California Supreme

7  Court denied the petition without comment or citation.  (Lodgment

8  No. 17, People v. Toluao, No. S206388, order at 1.)  Accordingly,

9  this Court must "look through" to the state appellate court's

10 decision denying the claim as the basis for its analysis.  Ylst,

11 501 U.S. at 805-06.

12      The California Court of Appeal rejected Toluao's claim that

13 admission of the statements violated his rights to confrontation

14 and due process:

15          To the extent that Siulua's out-of-court statements
            implicated Toluao in the charged crimes, they fell
16          comfortably within the declaration against penal interest
            exception to the hearsay rule.  Siulua's inculpatory
17          statements to Johnson did not suggest any attempt to
            shift blame and bore typical indicia of reliability.
18          ([People v.] Greenberger, supra, 58 Cal. App. 4th at p.
            335 ["the most reliable circumstance is one in which the
19          conversation occurs between friends in a noncoercive
            setting that fosters uninhibited disclosures"].)  In the
20          statements at issue, Siulua took responsibility for his
            role in the criminal activities and did not place more or
21          less blame on Toluao.  There was no evidence suggesting
            that Siulua knew at the time he made the statements that
22          Oates survived and Pruitt died.

23          Additionally, Siulua's statements were not made to
            curry favor with authorities.  The statements were all
24          made near the time of the shooting and Defendants were
            not arrested until two years later.  Thus, at the time
25          that Siulua made the statements, he did not have a motive
            to lie.
26

27 (Lodgment No. 14, People v. Toluao, No. D058242, slip op. at 17-

28 18.)

                              19

"The Sixth Amendment's Confrontation Clause provides that, '[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him.'  We have held that this bedrock procedural guarantee applies to both federal and state prosecutions."  Crawford v. Washington, 541 U.S. 36, 42 (2004) (alteration in original) (citing Pointer v. Texas, 380 U.S. 400, 406 (1965)).  The Confrontation Clause "guarantees the defendant a face-to-face meeting with witnesses appearing before the trier of fact."  Coy v. Iowa, 487 U.S. 1012, 1016 (1988).  The physical confrontation "enhances the accuracy of factfinding by reducing the risk that a witness will wrongfully implicate an innocent person."  Maryland v. Craig, 497 U.S. 836, 846 (1990).  Nevertheless, the Confrontation Clause "permits, where necessary, the admission of certain hearsay statements against a defendant despite the defendant's inability to confront the declarant at trial."  Id. at 847-48.  A Confrontation Clause violation is subject to harmless error review.  United States v. Nielsen, 371 F.3d 574, 581 (9th Cir. 2004).

In Crawford, the Supreme Court explained that the Sixth Amendment prohibits the admission of "testimonial" hearsay unless the declarant is unavailable and the defendant had a prior opportunity for cross-examination.  Crawford, 541 U.S. at 68. Crawford and cases that followed made it clear that Confrontation Clause protections are limited to testimonial statements.  See Giles v. California, 554 U.S. 353, 376 (2008) ("[O]nly testimonial statements are excluded by the Confrontation Clause."); Whorton v. Bockting, 549 U.S. 406, 420 (2007) ("[T]he Confrontation Clause has

14cv00093 JAH(RBB)

1  no application to [out-of-court nontestimonial] statements . . . .")

2      The Bruton rule bars the admission, in a joint prosecution, of

3  a nontestifying defendant's confession that incriminates a

4  codefendant.  Bruton v. United States, 391 U.S. at 137.

5          [T]here are some contexts in which the risk that the jury
           will not, or cannot, follow instructions [to assess the
6          impact of a statement of a codefendant as to that
           codefendant only] is so great, and the consequences of
7          failure so vital to the defendant, that the practical and
           human limitations of the jury system cannot be ignored.
8

9  Id. at 135.  But Bruton must be viewed through the lens of

10 Crawford; it does not apply to nontestimonial statements by

11 codefendants.  See United States v. Vasquez, 766 F.3d 373, 378 (5th

12 Cir. 2014); Smith v. Chavez, 565 F. App'x 653, 653 (9th Cir. 2014);

13 Peoples v. Gipson, No. CV 10-09107 ODW (SS), 2011 WL 5593789, at

14 *11 (C.D. Cal. Oct. 28, 2011) (noting that "numerous other circuits

15 have held that Bruton does not apply to non-testimonial

16 statements").  "Bruton is simply irrelevant in the context of

17 nontestimonial statements.  Bruton espoused a prophylactic rule

18 designed to prevent a specific type of Confrontation Clause

19 violation.  Statements that do not implicate the Confrontation

20 Clause, a fortiori, do not implicate Bruton."  United States v.

21 Dargan, 738 F.3d 643, 651 (4th Cir. 2013).  Accordingly, if the

22 statement is not testimonial, neither Crawford nor Bruton apply.

23     "A statement is testimonial when it is 'made under

24 circumstances which would lead an objective witness reasonably to

25 believe that the statement would be available for use at a later

26 trial.'"  United States v. Rojas-Pedroza, 716 F.3d 1253, 1267 (9th

27 Cir. 2013) (quoting Melendez-Diaz v. Massachusetts, 557 U.S. 305,

28 310 (2009)).  On the other hand, "statements made out-of-court with

21

a primary purpose other than possible prosecutorial use are nontestimonial." <u>United States v. Solorio</u>, 669 F.3d 943, 953 (9th Cir. 2012). Statements "not made to a governmental officer with an eye toward trial" are not testimonial. <u>Jensen v. Pliler</u>, 439 F.3d 1086, 1089-90 (9th Cir. 2006) (citations omitted). "[T]he relevant inquiry is not the subjective or actual purpose of the individuals involved in a particular encounter, but rather the purpose that reasonable participants would have had, as ascertained from the individual's statements and actions and the circumstances in which the encounter occurred." <u>Michigan v. Bryant</u>, 562 U.S. 344, 360 (2011).

The state court's conclusion that Siulua's statements did not violate Toluao's constitutional rights was not contrary to, or an unreasonable application of, clearly established federal law. Johnson was with Toluao and Siulua on the night of the shooting, and testified about what he personally observed. (Lodgment No. 7, Rep.'s Tr. vol. 9, 1568-69.) He also testified to the incriminating statements Siulua made to him immediately after the shooting, (<u>id.</u> at 1583), and one week later. (<u>Id.</u> vol. 10, 1625.) Siulua's statements were not made in a formal setting or to a government official. He made the statements shortly after the crime was committed and before the police were involved. The challenged statements were made to a fellow gang member. There was no reason for Silulua to anticipate that his private conversation with Johnson would be available for prosecutorial use at a later trial. <u>Melendez-Diaz</u>, 557 U.S. at 310; <u>see also</u> <u>Smith v. Chavez</u>, 565 F. App'x. at 653 ("The disputed statement--an account of the

22

crime [petitioner's codefendant] gave to his girlfriend in a motel room--was clearly not testimonial.").

It is clear from the circumstances that Siulua made statements incriminating himself and Toluao in the shooting without any reasonable expectation they would be used in a prosecution. See Davis v. Washington, 547 U.S. 813, 825 (2006) (citing "statements from one prisoner to another" and "statements made unwittingly to a Government informant" as examples that "were clearly nontestimonial"). Thus, under controlling federal law as established by the Supreme Court in Crawford, the admission of Siulua's out-of-court statements to Johnson did not implicate the Confrontation Clause because the statements were not testimonial.

Even if the state court erred in admitting the statements, the error was harmless. See Slovik v. Yates, 556 F.3d 747, 755 (9th Cir. 2009) ("Confrontation Clause errors are subject to harmless-error analysis."). The error is harmless where other evidence connects a defendant to the crime beyond a reasonable doubt. See United States v. Allen, 425 F.3d 1231, 1235 (9th Cir. 2005). The California Court of Appeal found that evidence against Toluao was strong based on multiple eyewitness accounts describing the shooters, and forensic evidence linking Petitioner to the crime. (Lodgment No. 14, People v. Toluao, No. D058242, slip op. at 11-12, 20.) Because testimony regarding Siulua's statements was cumulative of other evidence introduced at trial, any error in its admission did not have a "substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 638 (1993). For all these reasons,

1  Toluao's claim based on the admission of his codefendant's out-of-
2  court statements should be **DENIED**.

3  **D.    Request to Sever the Trial**

4      In ground three of his Petition, Toluao claims that his right
5  to a fair trial was violated when the trial court denied his motion
6  to sever his trial from his codefendant's.  (Pet. 11, ECF No. 1.)
7  Respondent argues that Toluao's claim is meritless because the
8  failure to sever trials did not amount to a constitutional
9  violation.  (Resp't's Answer Attach. #1 Mem. P. & A. 22, ECF No.
10 5.)  Respondent claims there is no clearly established federal law
11 requiring severance in state court.  (Id. at 23.)

12     Before trial, Petitioner's counsel sought to sever Toluao's
13 case from Siulua's based on the prosecution's decision to introduce
14 Silulua's statements implicating Toluao.  (Lodgment No. 1, Clerk's
15 Tr. vol. 2, 411-23; Lodgment No. 7, Rep.'s Tr. vol. 1, 31-34, Oct.
16 13, 2009.)  The trial court denied Petitioner's motion.  (Lodgment
17 No. 7, Rep.'s Tr. vol. 1, 37.)  Toluao challenged the failure to
18 sever his trial in the petition for review he filed in the
19 California Supreme Court.  (Lodgment No. 15, Petition for Review at
20 10-11, People v. Toluao, [No. S206388].)  The petition was denied
21 without comment or citation.  (Lodgment No. 17, People v. Toluao,
22 No. S206388, order at 1.)  Accordingly, the state appellate court's
23 decision denying the claim is the basis for this Court's analysis.
24 See Ylst, 501 U.S. at 805-06.

25     The California Court of Appeal reviewed the trial court's
26 decision not to sever the trial for abuse of discretion.  (Lodgment
27 No. 14, People v. Toluao, No. D058242, slip op. at 19.)  It noted
28 that the severance request was based on the admission of Siulua's

1   out-of-court statements to Johnson. (<u>Id.</u> at 20.) Because the

2   appellate court rejected Toluao's challenge to the admissibility of

3   the statements, it concluded that the trial court did not abuse its

4   discretion in denying the motion to sever. (<u>Id.</u>) The appellate

5   court stated:

> Although Toluao asserts that the statements
> implicated him as the person who shot Pruitt, independent
> evidence supported the prosecution's theory of the case.
> Jurors heard evidence that just after the shooting,
> Toluao stated, "We just shot three people, and I kicked
> some girl in the head and domed somebody." This
> statement alone connected Toluao to the crimes and
> specifically to Pruitt's murder. Further, as we have
> already explained, the evidence against Defendants was
> strong. (<u>Ante</u>, part I.B.) There was an abundance of
> evidence, including accomplice and eyewitness testimony
> and forensic evidence, from which the jury could connect
> Toluao to the charged offenses. Given the sufficient
> independent evidence, we do not see how the jury would
> have reached a different result absent admission of
> Siulua's out-of-court statements. Under the
> circumstances of this case, the failure to sever the
> trials did not result in a gross unfairness that
> constituted a constitutional violation.

16  (<u>Id.</u> at 20-21.)

17     "There is a preference in the federal system for joint trials

18  of defendants who are indicted together" because joint trials

19  "promote efficiency and 'serve the interest of justice by avoiding

20  the scandal and inequity of inconsistent verdicts.'" <u>Zafiro v.</u>

21  <u>United States</u>, 506 U.S. 534, 537 (1993) (discussing Rule 8(b) of

22  the Federal Rules of Criminal Procedure). At the same time, "[t]he

23  Supreme Court has never held that a trial court's failure to

24  provide separate trials on different charges implicates a

25  defendant's right to due process." <u>Collins v. Uribe</u>, 564 F. App'x

26  343 (9th Cir. 2014) (citing <u>Collins v. Runnels</u>, 603 F.3d 1127, 1132

27  (9th Cir. 2010)); <u>see also</u> <u>Martinez v. Yates</u>, 585 F. App'x 460, 460

28  (9th Cir. 2014) ("There is no clearly established Supreme Court

precedent dictating when a trial in state court must be severed.")[4]; Runningeagle v. Ryan, 686 F.3d 758, 774 (9th Cir. 2012) ("[T]here is no clearly established federal law requiring severance of criminal trials in state court even when the defendants assert mutually antagonistic defenses.").  "Because [there is] no clear answer to the question presented, . . . 'it cannot be said that a state court "unreasonably applied clearly established Federal law."'"  Wright v. Van Patten, 552 U.S. 120, 126 (2008) (quoting Carey v. Musladin, 549 U.S. at 77).

Even assuming Toluao could bring a federal habeas claim on this ground, Petitioner's argument that his right to a fair trial was violated by the court's denial of his severance request is without merit.  The Ninth Circuit has stated that a petitioner can establish a violation of his federal due process right to a fair trial if he carries his "burden of demonstrating that the state court's denial of his severance motion rendered his trial 'fundamentally unfair.'"  Grisby v. Blodgett, 130 F.3d 365, 370 (9th Cir. 1997) (quoting Hollins v. Dep't of Corr., State of Iowa, 969 F.2d 606, 608 (8th Cir. 1992)).  Grisby, however, fails to cite

---

[4]     The Supreme Court noted in a footnote in United States v. Lane that "misjoinder would rise to the level of a constitutional violation only if it results in prejudice so great as to deny a defendant his Fifth Amendment right to a fair trial."  474 U.S. 438, 446 n.8, 106 S. Ct. 725, 88 L. Ed. 2d 814 (1986).  However, we have held that this footnote in Lane does not qualify as clearly established federal law under federal habeas law.  Collins v. Runnels, 603 F.3d 1127, 1132 (9th Cir. 2010) ("The footnote upon which Collins relies did not set forth the governing legal principle in Lane.  It was merely a comment.").

Martinez v. Yates, 585 F. App'x at 461.

any controlling Supreme Court law.  See id.  In another case, the Ninth Circuit summarized the test for "constitutionally impermissible joinder":  "[T]he propriety of a consolidation rests within the sound discretion of the state trial judge.  The simultaneous trial of more than one offense must actually render petitioner's state trial fundamentally unfair and hence, violative of due process before relief pursuant to 28 U.S.C. § 2254 would be appropriate."  Bean v. Calderon, 163 F.3d 1073, 1084 (9th Cir. 1998) (quoting pre-AEDPA Featherstone v. Estelle, 948 F.2d 1497, 1503 (9th Cir. 1991)).  Bean also quoted footnote eight in Lane, 474 U.S. at 446 n.8, which Martinez v. Yates, 585 F. App'x at 461, and Collins v. Runnells, 603 F.3d at 1132, describe as "not qualify[ing] as clearly established federal law under federal habeas law."  Martinez v. Yates, 585 F. App'x at 461.  Nevertheless, even if the trial court's denial of the severance motion violated Petitioner's due process rights, habeas relief is not available in this Court unless the error had a "substantial and injurious effect or influence in determining the jury's verdict."  Brecht, 507 U.S. at 637-38 (citing Kotteakos v. United States, 328 U.S. 750, 776 (1946)); see also California v. Roy, 519 U.S. 2, 5 (1996).

    Petitioner has not shown that the denial of his motion to sever amounted to a due process violation.  Toluao's request was based on the admission of Siulua's statements implicating Petitioner.  Toluao's concern was that the jury would be prevented from making a reliable judgment about his guilt or innocence after hearing the statements from another gang member.  As discussed earlier, however, Siulua's statements were nontestimonial in

27

nature.   They were sufficiently reliable because they were made by
a coconspirator soon after the crime, and they did not shift the
blame to Petitioner.   Additionally, the state court noted there was
"an abundance of evidence" connecting Toluao to the offense.
(Lodgment No. 14, <u>People v. Toluao</u>, No. D058242, slip op. at 20.)
Toluao's statements after the shooting, as well as strong
eyewitness and forensic evidence connected him to the crime.

Petitioner has failed to demonstrate that his trial was
fundamentally unfair as a result of the denial of his severance
motion.   He has therefore failed to demonstrate that the state
appellate court's denial of this claim involved an unreasonable
application of clearly established federal law, or was based on an
unreasonable determination of the facts in light of the state court
proceedings.   <u>See</u> <u>Harrington v. Richter</u>, 562 U.S. 86, 103 (2011);
<u>Andrade</u>, 538 U.S. at 75-76; <u>Williams</u>, 529 U.S. at 412-13.   Assuming
Petitioner could demonstrate that his federal constitutional rights
were violated, he has not established that the denial of the
severance motion had any effect on the jury's verdict, must less a
substantial and injurious one.   Thus, any error was clearly
harmless.   <u>Roy</u>, 519 U.S. at 5; <u>Brecht</u>, 507 U.S. at 637.   For all
these reasons, Toluao's severance claim should be **DENIED**.

**E.   Admission of Toluao's Statements**

In claim four, Toluao alleges that he did not receive a fair
trial because the trial court allowed into evidence inadmissible
hearsay statements implicating Petitioner in the murder.   (Pet. 12,
ECF No. 1.)   At trial, the prosecution sought to introduce
testimony by Toluao's friend, Monica Villarreal, about Petitioner's

statements to his cousin Masi several days prior to the shooting. (See Lodgment No. 7, Rep.'s Tr. vol. 9, 1504.)

Defense counsel objected to the evidence as irrelevant and inadmissible hearsay. (Id.) The prosecution argued that the statements were not hearsay and were relevant to Toluao's state of mind and motive. (Id. at 1507.) The trial court initially decided the utterances were not admissible. (Id. at 1507-13.) A week later, Monica Villarreal was again called to the stand to testify. (Lodgment No. 7, Rep.'s Tr. vol. 13, 2235-36.) After hearing further argument, the court allowed her to testify about statements Masi and Toluao made because they were relevant to Toluao's motive. (Id. at 2226-33.) Villarreal testified that several days before the shooting, she picked up Petitioner and he was crying. (Id. at 2237.) Toluao was upset because he and his cousin Masi had a fight. (Id. at 2238.) Villarreal testified she told the police that Masi said Toluao "wasn't shit, and he wasn't about shit and that he really wasn't from the hood[.]" (Id. at 2240.) On cross-examination, Villarreal acknowledged that Toluao "didn't go into specifics about what the shit was about." (Id. at 2241.) She stated that "it was a family problem." (Id.)

Toluao challenged the decision to allow Villarreal's testimony about Masi's and Petitioner's statements in his petition for review he filed in the California Supreme Court. (Lodgment No. 15, Petition for Review at 12-14, People v. Toluao, [No. S206388].) The California Supreme Court denied the petition without comment or citation. (Lodgment No. 17, People v. Toluao, No. S206388, order at 1.) Accordingly, this Court must "look through" to the state

1  appellate court's decision denying the claim.  <u>Ylst</u>, 501 U.S. at

2  805-06.

3      The state appellate court dismissed Toluao's challenge to the

4  admitted statements, concluding they were admissible because they

5  were offered not for the truth but to show Petitioner's state of

6  mind and motive:

7      Here, there were two layers of out-of-court
       statements:  (1) Masi's statement to Toluao that
8      "[Toluao] wasn't shit, and he wasn't about shit and that
       he really wasn't from the hood," and (2) Toluao's
9      statement to Villarreal that Masi made those remarks.
       When evidence consists of multiple layers of hearsay, the
10     evidence is admissible if each layer separately meets the
       requirements of a hearsay exception.  (<u>People v. Arias</u>
11     (1996) 13 Cal. 4th 92, 149; <u>People v. Perez</u> (1978) 83
       Cal. App. 3d 718, 730.)  Likewise, multiple layers of
12     out-of-court statements are admissible if they are
       nonhearsay because they are not offered for the truth of
13     the matter.  (<u>See</u> <u>People v. Dehnel</u> (1979) 99 Cal. App. 3d
       404, 408-409.)

14

15     Both layers of statements in this case were relevant
       to Toluao's motive and state of mind regardless of the
16     truth of the stated facts that Toluao "wasn't shit" and
       "wasn't from the hood."  As to the first layer, Masi's
17     statement to Toluao was relevant to prove that the effect
       of that statement on Toluao was to motivate Toluao to
18     prove himself to Masi, a "shot caller" within the gang.
       A statement that is offered to prove the effect on the
19     hearer is nonhearsay because "'it is the hearer's
       reaction to the statement that is the relevant fact
20     sought to be proved, not the truth of the matter asserted
       in the statement.'"  (<u>People v. Scalzi</u> (1981) 126 Cal.
21     App. 3d 901, 907; <u>People v. Duran</u> (1976) 16 Cal. 3d 282,
       295.)  Similarly, as to the second layer, Toluao's
22     statement to Villarreal about Masi's remarks was relevant
       to Toluao's state of mind.  Statements that
23     circumstantially prove state of mind regardless of the
       truth of the contents of the statements are nonhearsay.
24     (<u>People v. Ortiz</u> (1995) 38 Cal. App. 4th 377, 389; <u>People</u>
       <u>v. Spencer</u> (1969) 71 Cal. 2d 933, 944.)  Further,
25     Toluao's state of mind and motive were relevant to an
       issue in dispute, namely whether his motivation in
26     committing the crimes was to benefit the gang.

27     The trial court did not abuse its discretion in
       ruling that the evidence was admissible because it was
28     relevant to Toluao's motive.  Moreover, given the
       abundance of evidence supporting Toluao's conviction, it
       is not reasonably probable that Toluao would have

> obtained a more favorable result absent Villarreal's testimony, especially where she stated that Toluao did not tell her the specifics of the argument and that it was a "family problem." Accordingly, we reject Toluao's argument.

(Lodgment No. 14, <u>People v. Toluao</u>, No. D058242, slip op. at 22-24.)

Toluao argues that the state appellate court erred in ruling that the statements were nonhearsay. (Pet. 12, ECF No. 1.) Respondent argues that Toluao's claim fails because the admission of evidence raises a state law claim, and there is no "clearly established Federal law" addressing the alleged violation of due process. (Resp't's Answer Attach. #1 Mem. P. & A. 24-25, ECF No. 5 (citing <u>Holley v. Yarborough</u>, 568 F.3d at 1101.)

A "state court's procedural or evidentiary ruling is not subject to federal habeas review unless the ruling violates federal law, either by infringing upon a specific federal constitutional or statutory provision or by depriving the defendant of the fundamentally fair trial guaranteed by due process." <u>Walters v. Maass</u>, 45 F.3d 1355, 1357 (9th Cir. 1995) (citing <u>Pulley v. Harris</u>, 465 U.S. 37, 41 (1984)). "[E]vidence erroneously admitted warrants habeas relief only when it results in the denial of a fundamentally fair trial in violation of the right to due process." <u>Briceno</u>, 555 F.3d at 1077 (citing <u>Estelle v. McGuire</u>, 502 U.S. at 67-68).

Petitioner fails to demonstrate the admission of out-of-court statements was so arbitrary or prejudicial that it "rendered the trial fundamentally unfair in violation of due process." <u>See</u> <u>Holley</u>, 568 F.3d at 1101 (quoting <u>Johnson v. Sublett</u>, 63 F.3d 926, 930 (9th Cir. 1995).) Under Ninth Circuit authority, the admission of evidence renders a trial fundamentally unfair "[o]nly if there

are no permissible inferences the jury may draw from the evidence."
Jammal, 926 F.2d at 920.  Here, as explained by the California
Court of Appeal, the statements were offered not for their truth,
but for a nonhearsay purpose, namely, to show Toluao's motivation
was to benefit the gang.  (See Lodgment No. 14, People v. Toluao,
No. D058242, slip op. at 23.)  The jury could reasonably conclude
that Petitioner was influenced by his fight with Masi and intended
to participate in the shooting to seek revenge for the gang.
Moreover, it is unlikely that exclusion of Villarreal's testimony
would result in a more favorable verdict for the Petitioner because
other evidence connected Toluao to the crime.

The Court concludes that the state court's decision on this
claim was neither contrary to, nor involved an unreasonable
application of, clearly established federal law, and was not based
on an unreasonable determination of the facts in light of the
evidence presented in the state courts.  Based thereon, the Court
recommends that habeas relief as to claim four be **DENIED**.

**F.   Denial of Request for Evidentiary Hearing and Motion for a New Trial**

In ground five, Petitioner claims his due process rights were
violated when the trial court denied an evidentiary hearing on
Toluao's motion for a new trial and summarily denied the motion.
(Pet. 14, ECF No. 1.)  Toluao moved for a new trial based on
alleged juror misconduct and juror coercion.  (See Lodgment No. 1,
Clerk's Tr. vol. 3, 617-26.)  He also filed a petition seeking the
release of juror information.  (See Lodgment No. 1, Clerk's Tr.
vol. 3, 609-13, Apr. 6, 2010 (petition to release juror
information).)  In support of his requests, Petitioner's defense

counsel submitted a declaration from an investigator who spoke with one of the jurors.  (Id. at 614-15.)  Juror number five told the investigator that she believed Toluao was not guilty.  She stated that the jurors discussed the upcoming Thanksgiving holiday and the fact that the trial took longer than expected.  (Id. at 615.)  She also explained that she believed Petitioner had the right to appeal even if she voted guilty and could be home for Thanksgiving.  (Id.)

The prosecution opposed the petition and motion on the grounds that the investigator's declaration was inadmissible hearsay, and any evidence regarding a juror's thought process during deliberations was barred by California Evidence Code section 1150. (Id. at 630-41, May 10, 2010 (opposition to petition and motion).) The trial court denied the request for an evidentiary hearing, the motion for new trial, and the petition to release juror information.  (Lodgment No. 6, Rep.'s Tr. - Augment vol. 6, 485-88, Aug. 3, 2010 (post-trial motions).)

Petitioner raised these claims in the petition for review he filed in the California Supreme Court.  (Lodgment No. 15, Petition for Review at 15-16, People v. Toluao, [No. S206388].)  The California Supreme Court denied the petition without comment or citation.  (Lodgment No. 17, People v. Toluao, No. S206388, order at 1.)  Accordingly, this Court must "look through" to the state appellate court's decision denying the claim as the basis for its analysis.  Ylst, 501 U.S. at 805-06.

The California Court of Appeal found no abuse of discretion in the trial court's denial of the request for evidentiary hearing and denial of the motion for new trial:

Here, the only evidence Toluao presented of jury
misconduct was the defense investigator's declaration

33

14cv00093 JAH(RBB)

containing hearsay statements from one juror regarding her feelings on Toluao's guilt and about what other jurors purportedly discussed during deliberations. "[O]rdinarily a trial court does not abuse its discretion in declining to conduct an evidentiary hearing on the issue of juror misconduct when the evidence proffered in support constitutes hearsay." (People v. Dykes, supra, 46 Cal. 4th at p. 810.)

Moreover, nothing in the record indicates that the prosecutor actually disputed the information obtained by the defense investigator. Instead, the prosecutor took the position that the information, even if true, did not trigger either a requirement that juror information be disclosed or a new trial granted. Absent a factual dispute necessitating a hearing to resolve it, the trial court acted within its discretion in deciding the motion for a new trial without holding an evidentiary hearing. (People v. Davis (2009) 46 Cal. 4th 539, 625.)

(Lodgment No. 14, People v. Toluao, No. D058242, slip op. at 26.)

Toluao disagrees with the state court's reasoning and maintains that a review is "necessary," but fails to provide any support for his claim. (Pet. 15-16, ECF No. 1.) Respondent argues that Toluao's claim must be denied because he failed to present any admissible evidence of juror misconduct. (Resp't's Answer Attach. #1 Mem. P. & A. 25-27, ECF No. 5.)

The Sixth Amendment guarantees criminal defendants the right to a "fair trial by a panel of impartial, 'indifferent' jurors." Irwin v. Dowd, 366 U.S. 717, 722 (1961); see Dyer v. Calderon, 151 F.3d 970, 973 (9th Cir. 1998). "If only one juror is unduly biased or prejudiced or improperly influenced, the criminal defendant is denied his Sixth Amendment right to an impartial panel." United States v. Hendrix, 549 F.2d 1225, 1227 (9th Cir. 1997).

"[D]ue process does not require a new trial every time a juror has been placed in a potentially compromising situation." Smith v. Phillips, 455 U.S. 209, 217 (1982). The Supreme Court has held that the remedy for allegations of jury misconduct is a hearing, in

1  which the trial court determines the circumstances of what

2  transpired, the impact on the jurors, and whether it was

3  prejudicial.  See id. at 215-16; Remmer v. United States, 347 U.S.

4  227, 229-30 (1954).

5      Clearly established federal law, as determined by the Supreme

6  Court, does not mandate a hearing whenever an allegation of jury

7  misconduct or bias is raised.  See Sims v. Rowland, 414 F.3d 1148,

8  1153 (9th Cir. 2005); Tracey v. Palmateer, 341 F.3d 1037, 1044 (9th

9  Cir. 2003) ("Remmer and Smith do not stand for the proposition that

10  any time evidence of juror bias comes to light, due process

11  requires the trial court to question the jurors alleged to have

12  bias."); accord Harrison v. Arnold, Case No. 14-cv-011211 JST (PR),

13  2015 U.S. Dist. LEXIS 85085, at *40 (N.D. Cal. June 30, 2015).

14  Rather, the decision to conduct a hearing into alleged jury

15  misconduct and to determine its extent and nature is within the

16  trial court's discretion.  See, e.g., Tracey, 341 F.3d at 1044

17  ("[I]n determining whether a hearing must be held, the court must

18  consider the content of the allegations, the seriousness of the

19  alleged misconduct or bias, and the credibility of the source.")

20  (quoting United States v. Angulo, 4 F.3d 843, 847 (9th Cir. 1993));

21  United States v. Berry, 627 F.2d 193, 197 (9th Cir. 1980) ("The

22  decision to conduct a hearing into alleged jury misconduct and to

23  determine its extent and nature is discretionary.").

24      Not all allegations or evidence of jury misconduct may

25  properly be considered.  The "near-universal and firmly established

26  common-law rule in the United States flatly prohibit[s]" the

27  admission of juror testimony to impeach a verdict except where "an

28  extraneous influence" affected the verdict.  Tanner v. United

35

_States_, 483 U.S. 107, 117 (1987) (citations omitted).  Both Federal Rule of Evidence 606(b) and California Evidence Code section 1150(a) prohibit the use of juror testimony to impeach a verdict when that testimony relates to intrinsic matters such as the internal mental process by which the verdict was rendered.  _See_ Fed. R. Evid. 606(b); Cal. Evid. Code § 1150(a) (West 2009).

Rule 606(b) of the Federal Rules of Evidence limits the evidence a federal court may receive in considering the validity of a jury verdict:

> During an inquiry into the validity of a verdict or indictment, a juror may not testify about any statement made or incident that occurred during the jury's deliberations; the effect of anything on that juror's or another juror's vote; or any juror's mental processes concerning the verdict or indictment.  The court may not receive a juror's affidavit or evidence of a juror's statement on these matters.

Fed. R. Evid. 606(b).  There are exceptions for testimony on "extraneous prejudicial information . . . improperly brought to the jury's attention"; an improper "outside influence" on a juror, or a mistake in completing the verdict form.  _Id._  Federal Rule of Evidence 606(b) applies to petitions for habeas corpus from state court prisoners.  _See_ Fed. R. Evid. 1101(d) advisory committee's notes (discussing subdivision (d) to 1972 proposed rules) ("[R]ule [1101(d)] does not exempt habeas corpus proceedings. . . .  Hence subdivision [(d)(3)] applies the rules to habeas corpus proceedings to the extent not inconsistent with the statute."); _accord_ _Capps v. Sullivan_, 921 F.2d 260, 262-63 (10th Cir. 1990).

Federal courts have rejected habeas claims alleging juror misconduct where those claims rely on evidence inadmissible under Rule 606(b).  _See, e.g._, _Harrison v. Gillespie_, 640 F.3d 888, 895

n.4 (9th Cir. 2011) (noting, in context of a § 2241 habeas petition, that a Court "may not consider jurors' testimony addressing the jury's deliberative process unless the testimony 'bear[s] on extraneous influences on the deliberation[]'") (quoting United States v. Pimentel, 654 F.2d 538, 542 (9th Cir. 1981)); Estrada v. Scribner, 512 F.3d 1227, 1237–38 (9th Cir. 2008) (approving district court's conclusion that juror affidavits were inadmissible to support a § 2254 habeas petitioner's juror misconduct claim); Anderson v. Terhune, 409 F. App'x 175, 179 (9th Cir. 2011) (limiting, pursuant to Rule 606(b), the evidence considered in deciding habeas petitioner's juror misconduct claim).

Petitioner's claim fails because, as explained above, there is no constitutional requirement or United States Supreme Court case that requires a trial court to conduct an investigation into juror misconduct unless sufficient credible evidence demonstrated jury tampering, juror misconduct, or juror bias.  See Tracey, 341 F.3d at 1044–45.  The only evidence Toluao presented was a defense investigator's affidavit recounting the juror's statement. Petitioner did not offer a sworn statement from the juror, and his counsel represented to the trial court that the juror would not sign a declaration under penalty of perjury.  (Lodgment No. 6, Rep.'s Tr. Aug. vol. 6, 485–86.)  Given these facts, the court did not have any basis for conducting a further inquiry.  The state court properly concluded that no admissible evidence supported Petitioner's claim.

Additionally, the investigator's declaration would not be admissible because it contained statements about a juror's deliberative process.  The comments Toluao sought to introduce

37

reflected the juror's mental process, including her thoughts on the weight of evidence, length of trial, and the influence of the upcoming holiday on her decision.   Juror statements about the internal deliberative process are not admissible under federal law. See Fed. R. Evid. 606(b); Estrada v. Scribner, 512 F.3d at 1237 (holding that juror's declaration that he felt pressured to vote guilty was inadmissible evidence of subjective mental process). Because Petitioner would not be able to present admissible evidence of the alleged juror misconduct, this claim must fail.   The court of appeal's denial of Toluao's claim of juror misconduct was not an unreasonable application of federal law.

Moreover, the evidence Toluao sought to introduce did not demonstrate juror misconduct.   Juror number five's comments reflect that she had second thoughts after she voted to convict Petitioner. No evidence in the record indicates that juror number five was prevented from expressing her views during deliberations or pressured to vote a certain way.   Furthermore, the court asked each juror whether the verdicts they reached as to both defendants were their individual verdicts, and juror number five responded in the affirmative.   (Lodgment No. 7, Rep.'s Tr. Aug. vol. 18, 2809-13 (polling jurors).)   She answered without hesitation and did not mention being uncertain or pressured when polled after the verdict. (See Lodgment No. 14, People v. Toluao, No. D058242, slip op. at 28.)

Even assuming Petitioner could offer evidence of pressure applied to the individual juror, he cannot establish a constitutional violation on this basis.   Mere "heated discussions that naturally occur at times during jury deliberations" without

38

physical coercion did not support a habeas claim based on juror misconduct. <u>See</u> <u>Panella v. Marshall</u>, 434 F. App'x 603, 605 (9th Cir. 2011); <u>Flores v. Chavez</u>, No. CV 10-5375 DSF(JC), 2013 WL 3762203, at *10 (C.D. Cal. July 15, 2013) (agreeing with the state court's conclusion that "the 'harsh' treatment of the 'holdout' juror by other jurors does not constitute grounds to impeach the verdict"). "[A]llegations that relate to 'intrinsic jury processes' do not implicate the protections of the Sixth Amendment." <u>Gomez v. Biter</u>, No. CV 12-09681-FMO (DFM), 2014 WL 4828939, at *7 (C.D. Cal. Sept. 29, 2014) (citations omitted).

Toluao asserts that he should have been granted an evidentiary hearing and new trial based on juror misconduct. (Pet. 14, ECF No. 1.) For the reasons discussed above, the Court concludes that the state court's decision rejecting Toluao's claim was neither contrary to, nor involved an unreasonable application of, clearly established federal law, and was not based on an unreasonable determination of facts in light of the evidence presented in the state courts. Based thereon, the Court recommends that habeas relief as to this claim be **DENIED**.

**G.    Denial of Request to Release Juror Information**

In claim six, Petitioner argues that the trial court erred in denying his request for juror information which Petitioner needed for his motion for a new trial. (Pet. 15, ECF No. 1.) Toluao filed a petition to release juror information alleging juror misconduct and juror coercion. (Lodgment No. 1, Clerk's Tr. vol. 3, 609-13.) The trial court denied the request. (Lodgment No. 6, Rep.'s Tr. Aug. vol. 6, 485-89.) Petitioner raised these claims in his petition for review to the California Supreme Court. (Lodgment

No. 15, Petition for Review at 17-18, <u>People v. Toluao</u>, [No. S206388].)   The petition was denied without comment or citation. (Lodgment No. 17, <u>People v. Toluao</u>, No. S206388, order at 1.) Accordingly, this Court looks to the state appellate court's decision denying the claim as the basis for its analysis.   <u>Ylst</u>, 501 U.S. at 805-06.

Under California law, juror identifying information in a criminal case must be sealed upon the recording of a jury's verdict, absent further order of the court.   <u>See</u> Cal. Civ. Proc. Code § 237(a), (b) (West 2006).   A defendant may, however, petition the court for access to juror identifying information "necessary for the defendant to communicate with jurors for the purposes of developing a motion for new trial or any other lawful purpose." <u>Id.</u> § 206(g).   The defendant must make a prima facie showing of good cause for the release of juror information. <u>See id.</u> § 237(b).

The state appellate court concluded that Toluao had not shown good cause to access juror information under California law:

> Here, Defendants argue they made a prima facie showing of good cause based on the declaration from Toluao's defense investigator.   Even assuming the truth of the defense investigator's assertions, Juror No. 5's statements reflected the jurors' thought processes and were not of such a character as to have influenced the verdict improperly.   While jurors may have discussed the upcoming Thanksgiving holiday and their desire to be home, there was no evidence that they rendered guilty verdicts because of those considerations.   Further, Juror No. 5's statements that some jurors believed that the perpetrators were Black, that she believed Toluao was not guilty, and that she believed Toluao had a right to appeal if she voted guilty went to the mental processes of the jurors.   (<u>See</u> <u>People v. Peavey</u> (1981) 126 Cal. App. 3d 44, 51 [juror's statement that she "believed [defendant] to be not guilty but only voted guilty because the rest of the jurors did so" was "demonstrative only of her mental processes and the subjective considerations"]; <u>People v. Stevenson</u> (1970) 4 Cal. App. 3d 443, 445 [juror's statement that he would have voted

not guilty had he known his vote would result in a hung jury went to the mental process of the juror].)

Notably, after the jury returned its guilty verdicts, each juror, including Juror No. 5, answered "yes" when polled as to whether the verdict was their individual verdict. There was no evidence of any hesitation or equivocation from the jurors.

Under the circumstances, the defense investigator's declaration did not constitute a good cause showing of juror misconduct justifying a subsequent hearing under Code of Civil Procedure section 237, and the trial court did not abuse its discretion in denying that hearing.

(Lodgment No. 14, <u>People v. Toluao</u>, No. D058242, slip op. at 28-29.)

In his Petition, Toluao claims that the state court erred in denying his petition to release juror information "that was necessary for a motion for new trial." (Pet. 15, ECF No. 1.) Respondent alleges that Petitioner's claim fails to state a federal question and must be denied. (Resp't's Answer Attach. #1 Mem. P. & A. 27-28, ECF No. 5.) Respondent Soto points out that the appellate court applied California state law, and its application of state law is binding and cannot be challenged on federal habeas review. (<u>Id.</u>)

To state a claim under § 2254, a petitioner must allege the state court violated his federal constitutional rights. <u>Hernandez</u>, 930 F.2d at 719; <u>Jackson v. Ylst</u>, 921 F.2d at 885. "The state courts' allegedly improper application of [California Code of Civil Procedure section] 237 is not a basis for federal habeas relief." <u>Yang v. McDonald</u>, No. 2:11-cv-0212 KJM AC P, 2012 WL 6738311, at *18 (E.D. Cal. Dec. 28, 2012) (citing <u>Estelle v. McGuire</u>, 502 U.S. at 67-68). Thus, to the extent Petitioner brings his claim on this basis, it must be denied.

Toluao cites no United States Supreme Court authority recognizing a federal constitutional right to have jury information unsealed, particularly where it appears the information from the juror is not likely to be of constitutional significance.  See id. ("No federal law, clearly established by the Supreme Court or otherwise, requires a state court to permit post-trial access to jurors in a fishing expedition for misconduct."); White v. Knowles, No. C 00-3482 PJH (PR), 2011 WL 1196053, at *5 (N.D. Cal. Mar. 29, 2011) ("Petitioner cites no United States Supreme Court authority recognizing a constitutional right to have jury information unsealed, and the court has found none.").  Toluao's request for release of juror information was based on his allegations of juror misconduct.  Because Petitioner's juror misconduct claim did not give rise to a due process violation, the failure to release juror information to investigate the claim likewise does not warrant federal habeas relief.  For these reasons, the Court recommends that claim six in Toluao's Petition should be **DENIED**.

**H.    Denial of Romero Motion**

Toluao claims in ground seven that the trial court incorrectly denied his motion to strike his prior conviction when imposing a sentence.  (Pet. 16, ECF No. 1.)  Petitioner had a conviction from 2003 that qualified as a strike prior.  (Lodgment No. 1, Clerk's Tr. vol. 1, 17-18.)  Toluao participated in a robbery where the victim was punched and kicked.  (Lodgment No. 1, Clerk's Tr. vol. 2, 597 (criminal history).)  At sentencing, defense counsel asked the court to strike the strike and argued that Toluao was a young individual "facing a considerable amount of time."  (Lodgment No.

1  No. 7, Rep.'s Tr. vol. 20, 2834.)  The trial court discussed the

2  factors involved in its decision to deny the motion:

3          The first issue with respect to Mr. Toluao is
   whether or not the strike should be stricken.  The Court

4  in -- the Supreme Court in the <u>Romero</u> case only gave the
   courts limited jurisdiction in deciding whether or not to

5  strike a strike.  Among the factors the Court considers
   is whether or not the current offense is de minim[i]s.

6  Under the three strikes law, the offense could be any
   felony, could be a petty theft, it could be that's a

7  felony because of the prior or something along those
   lines.  That's not what we have in this case.

8
           This current case is not de minim[i]s.  It's

9  obviously the most serious type of offense we have in the
   system.  So considering that factor, that factor points

10 against striking the strike.

11         The other factor the Supreme Court looked at was the
   age of the prior.  There are some cases where the prior

12 is 20 years old and the person's led an exemplary life
   for 20 years.  Well, there in that situation the Court

13 would say you -- that would point towards striking the
   strike.  We don't have that in this case.  This was a

14 relatively recent prior, as the District Attorney pointed
   out, only about two years from the prior until the

15 current case.

16         The next factor the Court considers is how serious
   was the prior.  Some strike offenses are more serious

17 than others.  This one was clearly a serious offense.  In
   looking at all the <u>Romero</u> factors, the Court then says,

18 looking at all of those factors, the Court makes an
   inquiry as to whether or not it appears from all of that,

19 looking at the totality of the circumstances, does this
   person appear in weighing those factors that they fall

20 outside the spirit of the three strikes law.  In that
   case the Court could strike the strike.  In this case

21 when you combine all those factors, clearly this
   defendant falls within the spirit of the three strikes

22 law; therefore, it appears to me it would be an abuse of
   discretion to strike the strike.  So the strike will not

23 be stricken.

24 (<u>Id.</u> at 2841-42.)  Petitioner raised his prior strike claim in the

25 petition for review he filed in the California Supreme Court.

26 (Lodgment No. 15, Petition for Review at 19-20, <u>People v. Toluao</u>,

27 [No. S206388].)  The California Supreme Court denied the petition

28 without comment or citation.  (Lodgment No. 17, <u>People v. Toluao</u>,

No. S206388, order at 1.)  Accordingly, this Court must "look

through" to the state appellate court's decision denying the claim

as the basis for its analysis.  Ylst, 501 U.S. at 805-06.  The

state appellate court held that the trial court did not abuse its

discretion in denying Toluao's motion:

> Our review of the record convinces us that the trial
> court fully understood its discretion on the Romero
> motion and properly applied it.  Toluao has a continuous
> history of criminal conduct that started when he was a
> juvenile and has escalated ever since.  In 1998, Toluao
> committed petty theft and vandalism and was sentenced to
> community service.  In 2000, Toluao committed a robbery
> in which he hid behind dumpsters, jumped out and then
> punched the victim in the face while his cohort stole the
> victim's wallet.  Toluao then committed another robbery
> in 2003.  This time, Toluao and other Bloods members
> punched and kicked the victim until the victim gave them
> his wallet.  Toluao was sentenced to two years in prison
> for this crime, which constituted a prior strike
> conviction.  Additionally, since he was a juvenile,
> Toluao continuously associated with known gang members.
>
> Toluao has not met his burden of showing that the
> trial court's decision was irrational or arbitrary.
> Accordingly, we cannot conclude that the trial court
> abused its discretion in declining to strike Toluao's
> prior strike conviction.

(Lodgment No. 14, People v. Toluao, No. D058242, slip op. at 31-

32.)

    To the extent Toluao's habeas petition is based on the trial

court's denial of his motion to strike the prior conviction

pursuant to People v. Superior Court (Romero), 13 Cal. 4th 497, 917

P.2d 628, 53 Cal. Rptr. 2d 789, his claim does not entitle him to

relief.  The application of a California state court decision,

Romero, raises an issue of state law and thus is not cognizable on

federal habeas review.  See Estelle, 502 U.S. at 67-68.  The Ninth

Circuit has refused to consider state law errors in the application

of state sentencing law.  Christian v. Rhode, 41 F.3d 461, 469 (9th

Cir. 1994) (holding that a claim that state court improperly used prior federal offense to enhance punishment is not cognizable on federal habeas review); Miller v. Vasquez, 868 F.2d 1116, 1118-19 (9th Cir. 1989) (stating that a claim that prior conviction was not a "serious felony" under state sentencing law was not cognizable in federal habeas corpus proceeding); Edwards v. Ollison, 621 F. Supp. 2d 863, 881 (C.D. Cal. 2008) (citing Brown v. Mayle, 283 F.3d 1019, 1040 (9th Cir. 2002), vacated on other grounds, Mayle v. Brown, 538 U.S. 901 (2003) ("The Ninth Circuit has held that a challenge to the denial of a Romero request constitutes a state law claim that cannot be considered in a federal habeas petition."). Habeas relief for this claim is therefore foreclosed.

Under narrow circumstances, however, the misapplication of state sentencing law may violate due process. See Richmond v. Lewis, 506 U.S. 40, 50 (1992). "[T]he federal, constitutional question is whether [the error] is so arbitrary or capricious as to constitute an independent due process" violation. Id. (internal quotation and citation omitted); see also Christian v. Rhode, 41 F.3d at 469 "Absent a showing of fundamental unfairness, a state court's misapplication of its own sentencing laws does not justify federal habeas relief."). Petitioner has shown no such fundamental unfairness.

To state a cognizable federal habeas claim based on an alleged due process violation, Toluao must establish that his state sentence was "arbitrary or capricious." Richmond, 506 U.S. at 50. Petitioner may not, however, "transform a state-law issue into a federal one merely by asserting a violation of due process." Langford v. Day, 110 F.3d 1380, 1389 (9th Cir. 1996). Courts in

45

the Ninth Circuit have rejected the argument that a denial of a Romero motion can serve as the basis for a federal habeas claim. See Taylor v. Mitchell, No. EDCV 11-1207-JSL (MAN), 2012 WL 3670632, at *10 (C.D. Cal. June 1, 2012); Edwards v. Ollison, 621 F. Supp. 2d at 881. Toluao has not otherwise established that his sentence violated due process, and merely attaching this label on an alleged state law sentencing violation is insufficient to state a cognizable federal constitutional claim. The state court of appeal properly found that the trial court committed no error in the exercise of its discretion by declining to strike Petitioner's prior conviction. (Lodgment No. 14, People v. Toluao, No. D058242, slip op. at 31-32.) This decision was neither contrary to, nor an unreasonable application of, clearly established Supreme Court law. See 28 U.S.C. § 2254(d)(1). Nor was the decision based upon an unreasonable determination of the facts. See 28 U.S.C. § 2254(d)(2).

For all these reasons, claim seven in Toluao's Petition does not entitle him to relief and should be **DENIED**.

## I.   Joinder

In claim eight, Petitioner seeks to join "into arguments made by co-petitioner that would accrue to his benefit." (Pet. 17, ECF No. 1.) Respondent argues that this claim fails to allege a violation because Toluao has no co-petitioner. (Resp't's Answer Attach. #1 Mem. P. & A. 30, ECF No. 5.)

Toluao raised this claim on direct appeal and also in the petition for review he filed in the California Supreme Court. (Lodgment No. 9, Appellant's Opening Br. at 68, People v. Toluao, No. D058242; Lodgment No. 15, Petition for Review at 21, People v.

Toluao, [No. S206388].)  In his state court appeal, Petitioner
cited California Rule of Court 8.200(a)(5) to join or adopt by
reference "any brief in the same or companion cases."  (Lodgment
No. 9, Appellant's Opening Br. at 68, People v. Toluao, No.
D058242.)  Toluao cited California Rule of Court 8.504(e) to
support his request to "join in a petition or adopt by reference
any petition in the same or companion cases" in his petition for
review to the California Supreme Court.  (Lodgment No. 15, Petition
for Review at 21, People v. Toluao, [No. S206388].)  The California
Supreme Court denied the petition without comment or citation.
(Lodgment No. 17, People v. Toluao, No. S206388, order at 1.)

Petitioner did not cite any legal authority for his request to
join in the arguments raised by another petitioner.  (Pet. 17, ECF
No. 1.)  Toluao relies on state court rules for his joinder
request, but the California Rules of Court do not bind the federal
court.  See In re Temporomandibular Joint (TMJ) Implants Prod.
Liab. Litig., 113 F.3d 1484, 1493 n.11 (8th Cir. 1997).  Unlike in
state court, a federal habeas petitioner may not incorporate claims
by reference.  Rials v. Grounds, No. ED CV 13-2152-JVS (PLA), 2015
WL 1893199, at *14 (C.D. Cal. Jan. 29, 2015).  The rules governing
federal habeas cases require a petition to "specify all the grounds
for relief available to the petitioner," "state the facts
supporting each ground," and "state the relief requested."  Rule
2(c), 28 U.S.C.A. foll. § 2254.

Even if Toluao could incorporate another petitioner's claims
in his federal habeas petition, his request fails.  Toluao has not
attached any other briefs or petitions to this habeas petition.  He
does not have a co-petitioner.  Toluao fails to articulate any

47

1    arguments or claims he attempts to join, and does not provide any

2    supporting facts for this claim.

3        Under § 2254, a petitioner is required to allege facts "with

4    sufficient specificity to support his claim for relief." Wacht v.

5    Cardwell, 604 F.2d 1245, 1246 (9th Cir. 1979).

6        [I]n order to substantially comply with the Section 2254
         Rule 2(c), a petitioner must state specific,
7        particularized facts which entitle him or her to habeas
         corpus relief for each ground specified.  These facts
8        must consist of sufficient detail to enable the court to
         determine, from the face of the petition alone, whether
9        the petition merits further habeas corpus review.

10   Adams v. Armontrout, 897 F.2d 332, 334 (8th Cir. 1990).

11       Toluao's conclusory joinder claim is insufficient because it

12   does not include any factual allegations in support of this ground

13   for relief.  See McFarland v. Scott, 512 U.S. 849, 856 (1994)

14   ("Habeas corpus petitions must meet heightened pleading

15   requirements . . . .").  Petitioner is not entitled to relief on

16   his unsupported and conclusory claims.  See James v. Borg, 24 F.3d

17   20, 26 (9th Cir. 1994) ("Conclusory allegations which are not

18   supported by a statement of specific facts do not warrant habeas

19   relief."); see also United States v. Smith, 924 F.2d 889, 896 (9th

20   Cir. 1991) ("[U]nsupported and conclusory claims are not sufficient

21   to show error.") (discussing writ of habeas corpus ad

22   testificandum).  For these reasons, claim eight in Toluao's

23   Petition does not entitle him to relief and should be **DENIED**.

24                          **V. CONCLUSION**

25       The Court submits this Report and Recommendation to United

26   States District Judge John A. Houston under 28 U.S.C. § 636(b)(1)

27   and Local Civil Rule HC.2 of the United States District Court for

28   the Southern District of California.  For the reasons outlined

                                  48

above, **IT IS HEREBY RECOMMENDED** that the district court issue an Order (1) approving and adopting this Report and Recommendation and (2) directing that Judgment be entered denying the Petition.

**IT IS ORDERED** that no later than September 28, 2015, any party to this action may file written objections with the Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than October 12, 2015.  The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order.  See Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156 (9th Cir. 1991).

**IT IS SO ORDERED.**

DATED: August 25, 2015

Ruben B. Brooks
United States Magistrate Judge

cc:  Judge Houston
     All parties